IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED

MAY 1 3 2009

CLERK, U.S. DISTRICT C...
ALEXANDRIA, VIRGIN...

Shaka Amir Farrakhan,       )
    Plaintiff,       )
           )
v.       )    1:08cv438 (TSE/JFA)
           )
Gene Johnson, et al.,       )
    Defendants.       )

MEMORANDUM OPINION

Shaka Amir Farrakhan,[1] a Virginia inmate currently housed at Marion Correctional Treatment

Center in Marion, Virginia, and proceeding pro se, filed this civil rights action pursuant to 42 U.S.C.

§ 1983, along with an application to proceed in forma pauperis. The lawsuit names forty-seven

defendants, the majority of whom appear to be individuals employed at various Virginia Department

of Corrections ("VDOC") facilities and departments located in both the Eastern and Western

Districts of Virginia, and it raises a litany of claims which span virtually all aspects of plaintiff's

incarceration.[2] Because it was unclear whether jurisdiction for all of plaintiff's claims was present

---

[1] Plaintiff frequently litigates in this Court. All ten of plaintiff's previous § 1983 civil actions were dismissed without prejudice, many for failure to comply with a Court Order. See Farrakhan v. Johnson, et al., 1:07cv599 (E.D. Va. Oct. 1, 2007); Farrakhan v. Ruscak, et al., 1:06cv1155 (E.D. Va. Feb. 26, 2007); Farrakhan v. Ruscak, et al., 1:00cv1233 (E.D. Va. Nov. 20, 2000); Farrakhan v. Hill, et al.,1:00cv205 (E.D. Va. Oct. 18, 2000); Farrakhan v. Reed, et al., 1:97cv1479 (E.D. Va. Nov. 24, 1997); Farrakhan v. Hill, et al., 1:97cv1199 (E.D. Va. Mar. 20, 1998); Farrakhan v. Procop, et al., 1:97cv722 (E.D. Va. July 9, 1997); Farrakhan v. Hill, et al., 1:97cv721 (E.D. Va. July 9, 1997); Farrakhan v. Doe # 1, et al., 1:94cv864 (E.D. Va. Sept. 29, 1994); Farrakhan v. Murray, et al., 1:91cv1971 (E.D. Va. Feb. 12, 1992). In addition to the instant action, plaintiff has one other active § 1983 case currently pending in this Court, Farrakhan v. Johnson, 1:09cv178.

[2] Plaintiff previously filed similar claims against many of the same defendants in Farrakhan v. Johnson, et al., 1:07cv599 (E.D. Va. Oct. 1, 2007). By Order dated July 10, 2007, eight of plaintiff's ten claims in that case were dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1). It appears that in the instant complaint, plaintiff has attempted to modify his previous claims by including buzz words taken from the Court's July 10 Order in an attempt to have

in the Eastern District of Virginia, plaintiff was directed by Order dated May 13, 2008, to inform

the Court where the defendants reside or could be found and where the various causes of action

alleged in the complaint arose. Plaintiff filed a Response to the Court's Order on May 23 and a letter

on May 29, both of which raised additional claims. Liberally construed, the complaint raises the

following claims:

> 1. Defendants denied or obstructed his ability to exhaust his administrative remedies through the inmate grievance procedure by denying or refusing his grievances, failing to respond to his complaints or by "holding" such complaints until the expiration of the appeal period, and requiring plaintiff pay the cost of postage to mail grievances to other facilities, see Compl. at ¶¶ 1, 7, 40;

> 2. Defendant Ulep at Sussex II State Prison violated plaintiff's Eighth Amendment rights by refusing to treat plaintiff's foot deformity and refusing to refer plaintiff to a podiatrist for proper treatment, see Compl. at ¶¶ 2, 7;

> 3. Defendants violated plaintiff's Eighth Amendment rights by requiring plaintiff to pay a co-payment for medical treatment of his chronic conditions, amounting to up to fifty percent of the cost, and if plaintiff refused to sign the medical co-pay agreement, medical treatment was denied, see Compl. at ¶¶ 6;

> 4. Defendants took money from plaintiff's prison account without his consent and have taken, mailed away, or destroyed certain items of personal property without providing plaintiff a hearing or any due process, see Compl. at ¶¶ 8 - 9;

> 5. Defendants at Sussex denied plaintiff the ability to practice his religion by refusing to give him an appropriate religious diet; by forcing him to eat foods that violated his religious dietary laws even though he was fasting; by placing him in segregation and "dry strip cell" status for failing to eat the foods offered to him; and forcing him to clean and relieve himself in full view of female officers and his cell mate, see Compl. at ¶¶ 10 - 12, 31;

> 6. Defendants violated the Equal Protection Clause by failing to provide plaintiff with an appropriate religious diet while providing prisoners of the Jewish faith with a religiously appropriate diet, see Compl. at ¶12 (a) ;

---

his claims withstand review by this Court. As noted below, despite plaintiff's efforts, many of the claims in the instant complaint also must be dismissed for failure to state a claim.

7. Defendants denied plaintiff access to the courts by refusing to provide him with his legal materials, refusing to allow him to meet with a state-appointed attorney, refusing to place postage on a civil action that had been submitted for mailing, and never mailing a lawsuit plaintiff wished to file, see Compl. at ¶¶ 13, 16 - 17, 23;

8. Defendants assigned plaintiff to punitive segregation status in retaliation for plaintiff's filing of multiple grievances and letters to the Governor concerning plaintiff's treatment, see Compl. at ¶¶ 14 - 15;

9. Defendants violated the Equal Protection Clause by refusing to apply the VDOC classification and assignment system in an equal manner, see Compl. at ¶¶ 18 -19;

10. Defendant Dr. McGee denied plaintiff medical treatment for his missing teeth, and he suffers pain in his gums from attempting to chew his food, see Compl. at ¶ 20;

11. Defendants violated the Due Process Clause by failing to follow VDOC procedures in connection with plaintiff's disciplinary hearings, see Compl. at ¶¶ 21 - 22;

12. Defendant Sims used racial slurs and threatened plaintiff, telling him that his Ramadan meals are poison and will kill him, see Compl. ¶ 39;

13. While at Wallens Ridge State Prison ("WRSP"), plaintiff has been harassed, called a "nigger and other racial slurs," threatened with anal sodomy by officers; and denied meals, recreation and showers, see Compl. at ¶ 24;

14. Defendants at WRSP have violated the Eighth Amendment by refusing to provide plaintiff with appropriate clothing to protect him against rainy and snowy conditions; by denying him thermal underclothing, socks and sweat clothes; by forcing him to remain in a cage under "very bright light" for hours a day; by double-bunking him in a cell designed for only one person, by failing to provide cleaning products that are adequate to clean a cell used by two persons; and by forcing him to consume his meals in unsanitary and offensive conditions, see Compl. at ¶¶ 25 - 28, 30, 34;

15. While at WRSP plaintiff has been denied "the rights of a consumer" because Keefe Co. has a monopoly on vending food and personal items, offers items that are stale and excessively priced, and will not accept coupons; and defendants at WRSP have allowed Keefe Co. to exhibit racial bias by failing to carry grooming products beneficial to black inmates, see Compl. at ¶¶ 29, 41 - 42;

16. Defendants at WRSP forced plaintiff to violate his religious beliefs by making him shower exposed to the day room and female officers; he must "bird bathe" and use the toilet in view of his cell mate; he is denied the ability to purchase pure prayer

3

oil from an authorized vendor; and he is forced to wear short rather than long gym pants , see Compl. at ¶¶ 31 - 32;

17. Plaintiff was placed in WRSP's "no privilege unit" without a hearing, in violation of his right to due process, and when he was released from segregated status his time was not credited properly against his sentence, see Compl. at ¶¶ 33, 38;

18. Defendants at WRSP mishandled his inmate account and personal property, by subtracting money from his inmate account for rule violations not related to property damage; failing to send his personal property items when he is transferred until he pays the postage; and allowing his food items to become stale when he is placed in disciplinary confinement, see Compl. at ¶¶ 35 - 37;

19. Plaintiff's right of access to the courts has been violated by defendants at WRSP, who have denied him use of the law library; forced him to rely on the assistance of prison officials, which creates a conflict of interest; and refused to make copies if plaintiff cannot pay for them, even if he is facing a court deadline, see Compl. at ¶ 44;

20. Defendants at WRSP have refused plaintiff medical treatment for severe hemorrhoids, allergic reactions, and his mouth pain, and caused him to endure "robust and progressive foot pain" by forcing him to walk in improper shoes and denying him the ability to obtain the orthopedic boots prescribed by the VDOC's podiatrist, and forcing him instead to wear low-cut Velcro shoes, see Compl. at ¶¶ 3-5, 43, 45;

21. Defendants at WRSP have created conditions that cause him extreme depression and stress, in that the racial slurs, denial of medical treatment, abuse, injustice, and lack of exposure to sunshine has had an adverse effect on his physical, emotional, spiritual and mental well-being, see Compl. at ¶ 46;

22. Defendants at WRSP added to emotional stress and pain by supplying him with well-worn, dingy, nasty underclothing and bedding, see Compl. at ¶ 47;

23. Defendants at WRSP have violated plaintiff's right to confidentiality by discussing his medical information in the presence of prison officials and other inmates, and forced plaintiff to submit to an anal examination in front of a prison officer, see Compl. ¶ 48; and

24. Defendants at WRSP violated plaintiff's right to equal protection by permitting Jewish prisoners to congregate for holiday meals but denying members of the Nation of Islam the same right, see Compl. ¶ 49.

Plaintiff seeks $4 million in punitive and $4 million in compensatory damages from each

defendant, as well as nominal damages and injunctive relief. Compl. 22. In his May 23 Response

4

and his May 29 letter, plaintiff appears to raise the following additional claims regarding his treatment

at Wallens Ridge State Prison:

> 25. Plaintiff has been "threatened, harassed [,] provoked" and punished by
> defendants at WRSP in retaliation for filing the instant civil action and other
> unspecified civil actions, see Response 4;
>
> 26. Plaintiff has been placed in "punitive" segregation on false institutional charges,
> see Response 4;
>
> 27. Plaintiff has told that if he "changes his name back to his name of birth and
> curse[s] Islam," he will receive medical treatment for his foot, see Response 5;
>
> 28. Plaintiff's dictionary and legal materials were taken from his cell, see Response
> 5;
>
> 29. Prison officials have threatened to have plaintiff killed if he does not cease filing
> complaints and civil actions and plaintiff lives in constant fear of being seriously hurt
> or killed, see May 29 Letter to the Court 3; and
>
> 30. Plaintiff has been denied orthopedic shoes and a visit with a podiatrist, see May
> 29 Letter to the Court 5.

After reviewing plaintiff's complaint, response, and letter, claims 13 through 30 must be

transferred for lack of venue. Claims 1, 3, 4, 5, 6, 7, 8, 9, 11, and 12 must be dismissed pursuant to

28 U.S.C. § 1915A(b)(1) for failure to state a claim,[3] and the instant complaint will remain pending

---

[3] Section 1915A provides:

(a) **Screening.** – The court shall review, before docketing, if feasible or, in any event, as soon
as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress
from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for dismissal.** – On review, the court shall identify cognizable claims or
dismiss the complaint, or any portion of the complaint, if the complaint –
> (1) is frivolous, malicious, or fails to state a claim upon which relief can be
> granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

on claims 2 and 10.

## I.

The instant complaint and accompanying response and letter raise claims under 42 U.S.C. § 1983 for alleged violations of plaintiff's constitutional rights. Consequently, the proper venue in this case is defined by 28 U.S.C. § 1391(b), which provides that:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . , or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).  It is plaintiff's burden to establish that venue over his claims and each defendant is proper in the Eastern District of Virginia.  See, e.g., Bartholomew v. Va. Chiropractors Ass'n, 612 F.2d 812, 816 (4th Cir. 1979).  Claims 13 through 30 raise allegations concerning acts or omissions which occurred at Wallens Ridge State Prison, in Pound, Virginia.  As such, venue over those claims is not proper in this district.  Additionally, plaintiff has sued the following defendants in connection with those claims, none of whom are located in this district: "L.W. Huffman," "B. Watson," "Harvey," "Dr. Thompson," "Lt. Anderson," "M. Stanford, RN," "Major Combs," "Sgt. Ely," "Sgt. Greer," and several "John Does."  Because all of the events pertaining to Claims 13-30 occurred in the Western District of Virginia, and all of the above-listed defendants are located in the Western District of Virginia, venue is inappropriate in the Eastern District of Virginia, and these claims must be transferred to the Western District of Virginia.  See 28 U.S.C. § 1391.

## II.

### A. Standard of Review

In reviewing a complaint pursuant to § 1915A, a court must dismiss a prisoner complaint that

6

is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D.Va. 1998). To survive such a motion, a complaint must contain enough allegations of fact "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). In evaluating plausibility, the court need not rely on mere "labels and conclusions" or plaintiff's "formulaic recitation of the elements of a cause of action." Id. at 1965. Instead, the factual allegations must be enough to raise "a right to relief above the speculative level." Id. Where a plaintiff fails to "nudge[] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." Id. at 1974.

B. Merits

1. Grievances

In claim 1, plaintiff complains that defendants, including all grievance coordinators named in the complaint, have denied or obstructed his ability to exhaust his administrative remedies through the inmate grievance procedure. Plaintiff lists two defendants, identified only as "Seay" at Powhatan Correctional Center and "Massenburg" at Sussex II State Prison, as a grievance coordinators. This claim, however, is not cognizable in this § 1983 proceeding because the Constitution "creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); see also Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Brown v. Dodson, 863 F. Supp. 284, 285 (W.D. Va. 1994). As such, the failure of prison officials to resolve plaintiff's grievances in accordance with the grievance protocol or the failure to adhere or follow the grievance protocol does not give rise to a § 1983 claim. See Adams, 40 F.3d at

7

75; <u>Brown</u>, 863 F. Supp. at 285. Therefore, even if defendants denied or obstructed plaintiff's ability to exhaust claims through the grievance procedure, such obstruction will not merit plaintiff relief in this § 1983 proceeding, and this claim and attendant defendants Seay and Massenburg must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim. Additionally, to the extent that plaintiff is claiming that other VDOC officials not specifically identified in the listing of defendants as "grievance coordinators" engaged in this same behavior, this claim also must be dismissed against those officials.

### 3. Medical Co-Payment

In claim 3, plaintiff asserts that the VDOC requires him to pay a co-payment for treatment up to fifty percent of the cost of his chronic conditions, and that if he refuses to sign the medical co-pay agreement, medical treatment is denied. He complains further that VDOC policy prohibits the charging of co-payments for chronic treatment, yet alleges that fees for such treatment have been taken from his prison account. It is well-settled that prisoners are entitled to reasonable medical care and can sue prison officials under the Eighth Amendment if they can show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 105-06 (1976); <u>see Staples v. Virginia Dep't of Corrections</u>, 904 F. Supp. 487, 492 (E.D. Va. 1995). The requirement of a co-payment for prison medical services is not <u>per se</u> deliberate indifference to a serious medical need. <u>See Reynolds v. Wagner</u>, 128 F.3d 166, 174 (3d Cir. 1997); <u>Johnson v. Dep't of Pub. Safety & Correctional Servs.</u>, 885 F. Supp. 817, 820 (D. Md. 1995). Inmates are not entitled to free medical care, and an inmate's displeasure at having to pay such co-payment does not present a constitutional claim. <u>Johnson</u>, 885 F. Supp. at 820. Moreover, the allocation of the cost of medical care is matter of state law. <u>See City of Revere v. Mass. Gen. Hosp.</u>,

8

463 U.S. 239, 245 (1983). However, when medical care is denied to inmates because of their inability to pay the co-payment, deliberate indifference concerns under the Eighth Amendment are implicated. See, e.g., Collins v. Romer, 962 F.2d 1508, 1514 (10th Cir. 1992).

In light of these standards, claim 3 fails to state an Eighth Amendment claim. The VDOC may constitutionally charge plaintiff a co-payment for the treatment of his chronic medical conditions, and although plaintiff may be displeased with this requirement, that displeasure does not state a claim of constitutional dimensions. Additionally, any failure by prison officials to abide by VDOC policy governing the terms under which co-payments will be charged to an inmate likewise does not present a constitutional claim. Finally, although plaintiff asserts that a refusal to sign the medical co-payment agreement results in a denial of treatment as a general matter, there is no suggestion that any of the named defendants or any other persons denied medical care to this plaintiff based on or because of this plaintiff's inability to pay the medical co-payment. Therefore, claim 3 must be dismissed for failure to state a claim. 28 U.S.C. § 1915A(b)(1).

4. Due Process: Deprivation of Property

In claim 4, plaintiff alleges that he was deprived of his property, including money in his prison account and tangible personal property, without due process of law. The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." It is clear that plaintiff has a property interest in the funds in his prison account and the Court assumes that plaintiff has a protected interest in his tangible personal property in prison. Although due process requires a pre-deprivation hearing where loss of property results from established state procedures, Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), the Due Process Clause is not implicated and pre-deprivation process cannot reasonably be required

9

where the loss results from the random, unauthorized act of a state employee. Parratt v. Taylor, 451 U.S. 527 (1981); see Daniels v. Williams, 474 U.S. 327 (1986) (loss of property caused by negligence does not constitute a deprivation within the meaning of the Due Process Clause); Pink v. Lester, 52 F.3d 73, 75 (4th Cir. 1995) (same); Hudson v. Palmer, 468 U.S. 517 (1984). In such situations, the requirements of due process are satisfied by the availability of an adequate post-deprivation remedy under state law. Parratt, 451 U.S. at 541. The United States Court of Appeals for the Fourth Circuit has held that the Virginia Tort Claims Act, Va. Code §§ 8.01-195.1, et seq. and claims under Virginia tort law constitute adequate state post-deprivation remedies. Wadhams v. Procunier, 772 F.2d 75, 78 (4th Cir. 1985).

Claim 4 fails to state a claim for a deprivation of due process in a number of respects. First, there is no suggestion in the complaint that the deprivations about which plaintiff complains were made pursuant to any state procedure, and plaintiff fails to point to any such prison procedure or authorization by supervisory officials. To the extent that plaintiff's claim sounds in negligence, that claim is not cognizable in this § 1983 proceeding. See also DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-03 (1989) (section 1983 does not impose liability for violations of duties of care arising under state law). To the extent that plaintiff is alleging an intentional, unauthorized deprivation of his property by a prison official, that deprivation does not violate the Due Process Clause as plaintiff has a meaningful post-deprivation remedy in the form of a claim under Virginia tort law. Therefore, claim 4 must be dismissed for failure to state a claim. 28 U.S.C. § 1915A(b)(1).

### 5. Free Exercise of Religion

Next, plaintiff asserts that defendants have violated his right under the First Amendment to

free exercise of religion by: a) refusing to give him an appropriate religious diet, b) forcing him to eat foods that violated his religious dietary laws even though he was fasting, and c) forcing him to clean and relieve himself in full view of female officers and his cell mate. He appears to claim further that defendants have placed him in segregation and on a "dry strip cell status" in retaliation for failing to eat the foods offered to him, foods he fears violates his religious beliefs.

Inmates retain protections under the First Amendment, which provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend I; see Cruz v. Beto, 405 U.S. 319, 332, (1977). To state a free exercise claim, a plaintiff must allege facts sufficient to show that he (1) holds a sincere religious belief and (2) that his religious exercise was substantially burdened by the actions of defendants. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989); Blue v. Jabe, 996 F. Supp. 499, 502 (E.D. Va. 1996). As to the first prong, plaintiff must make two threshold showings: a) that he sincerely holds his religious beliefs and b) that his claims are rooted in religious beliefs, not those that are purely secular. Wisconsin v. Yoder, 406 U.S. 205, 215-16 (1972). As to the second prong, the Supreme Court has defined "substantial burden" in a number of ways, including "putting substantial pressure on an adherent to modify his behavior and violate his beliefs," Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 717-18 (1981), and forcing an individual to "choose between following the precepts of [his] religion and forfeiting benefit, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other," Sherbert v. Verner, 374 U.S. 398, 404 (1963).

In this case, plaintiff alleges that he believes in the "laws & teachings of The Hon. Elijah Muhammad (T.H.E.M.)" and he describes his beliefs as "sincere" and "religious." However, plaintiff

has failed to demonstrate that his claims are rooted in his religious beliefs, and not purely secular.[4]

Although plaintiff asserts that he has religious dietary laws to which he must adhere, he does not

indicate what these laws are or how the food available to him is insufficient to satisfy these laws.

Therefore, he has not shown that his claims regarding the offensive nature of the foods he receives

or may select from the prison menu is anything more than purely secular. Moreover, even assuming

plaintiff's claims are not purely secular, plaintiff states only that a "majority" of foods would cause

him to violate his religious dietary laws. He does not allege that all foods are offensive to his

religious sensibilities, or that the options are so deficient such that plaintiff is not properly nourished

as a result of those food options. The fact that plaintiff may not like the available, non-offensive

options simply does not rise to the level of a substantial burden on the exercise of his religious beliefs.

The rest of plaintiff's First Amendment claims must also fail. Plaintiff alleges that he has

been punished for failing to eat foods that violated his "religious dietary laws and sincere beliefs,"

but as noted above, plaintiff has not established that his claim is rooted in his religious beliefs and

not purely secular, so any resulting "punishment" cannot be said to be in response to an exercise of

such beliefs. Similarly, plaintiff claims that he was forced to eat foods that violated his dietary laws

despite the fact that he was fasting, yet plaintiff fails again to demonstrate that his claim is grounded

in a religious belief. Moreover, although plaintiff states that he was forced to eat while fasting, he

---

[4] Again, the Court notes that the essence of this claim was raised by plaintiff in the complaint filed in case number 1:07cv599. In that case, plaintiff's First Amendment claims regarding his diet were dismissed because plaintiff had failed to allege that he was "forced to eat foods forbidden by his religious beliefs or otherwise modify his religious behavior." See Farrakhan v. Johnson, et al., 1:07cv599, July 10, 2007 Order, Docket # 3. Not surprisingly, in the instant complaint, plaintiff alleges that he was "forced" to eat certain foods, and that many of the foods offered would result in him violating his religious beliefs. However, without sufficient facts to support his claims, plaintiff's invocation of key terms from the Court's previous Order is insufficient satisfy the requirements for stating a First Amendment free exercise claim.

does not allege that his fast was related to any exercise of a religious belief. Finally, plaintiff states
that he was forced to clean and relieve himself in full view of female officers and his cell mate,
forcing him to "violate his religious beliefs." As with his diet claims, plaintiff does not present facts
to demonstrate that this claim is grounded in any religious belief. Showering or using the bathroom
in front of others may be offensive or distasteful to all individuals, regardless of religious beliefs.
However, plaintiff's general dislike of this situation is not enough to state a First Amendment claim.
As a result, all portions of claim 5 must be dismissed for failure to state a claim pursuant to § 1915A.

      6. Equal Protection and Religious Diet:

      In claim 6, plaintiff alleges that defendants violated the Equal Protection Clause by failing
to provide him with an appropriate religious diet, while providing Jewish prisoners with a religiously
appropriate diet. The Equal Protection Clause of the Fourteenth Amendment protects against
arbitrary classifications by state actors. See U.S. Const. amend. XIV, § 1. To bring an equal
protection claim, a prisoner must plead sufficient facts to make a threshold showing "that he has been
treated differently from others with whom he is similarly situated and that the unequal treatment was
the result of intentional or purposeful discrimination." Veney v. Wyche, 293 F.3d 726, 730-31 (4th
Cir. 2002) (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). Only after satisfying
this threshold requirement will the Court determine whether the disparate treatment at issue was
justified. Id. at 731. "Once this showing is made, the court proceeds to determine whether the
disparity in treatment can be justified under the requisite level of scrutiny." Morrison, 239 F.3d at
654.

      First, because plaintiff has failed to demonstrate that his claims regarding his diet are
grounded in his religious beliefs, plaintiff has not made a threshold showing that he has been treated

13

differently than similarly situated prisoners who do, in fact, have religiously-based dietary laws to

which they must adhere. Second, even assuming plaintiff does not receive an adequate diet that

complies with his religious beliefs, he has failed to allege that such unequal treatment is the result of

any intentional or purposeful discrimination by prison officials. Therefore, claim 6 must be dismissed

for failure to state a claim. 28 U.S.C. § 1915A(b)(1).

### 7. Denial of Access to the Courts:

Next, plaintiff alleges that he was denied access to the courts because defendants refused to

provide him with his legal materials, refused to allow him to meet with a state-appointed attorney,

refused to place postage on a civil action that had been submitted for mailing, and never mailed a

lawsuit. The right of access to the courts is well-established, and encompasses not only access to law

libraries and adequate legal assistance, but also a prohibition on state prison officials from actively

interfering with inmates' attempts to prepare legal documents or to file them, and a requirement that

state courts waive filing fees or transcript fees for indigent inmates. Lewis v. Casey, 518 U.S. 343,

350 (1996). However, to make out a prima facie case of denial of access to the courts, the inmate

cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from

official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996); see also White v. White,

886 F.2d 721, 723-24 (4th Cir. 1989). A plaintiff must allege that he has suffered an "actual injury

or specific harm," Hause v. Vaught, 993 F.2d 1079, 1084-85 (4th Cir. 1993), by demonstrating "that

his non-frivolous, post-conviction or civil rights legal claim has been frustrated or impeded." Jackson

v. Wiley, 352 F. Supp. 2d 666, 679-80 (E.D. Va. 2004).

Here, plaintiff has failed to allege any actual injury or specific harm, therefore claim 6 must

be dismissed. Plaintiff states that defendant Vargo refused to give him his legal materials between

14

August 8 and August 31, 2007, so that he could "meet the Court's filing deadline." Compl. 10. As an initial matter, plaintiff did not file the instant complaint until May 5, 2008, therefore, his assertions regarding filing deadlines are inapplicable to this case. Moreover, plaintiff does not allege what filing deadline he missed, or that any non-frivolous civil rights legal claim was frustrated or impeded.[5] As well, plaintiff's claim that he was denied a consultation with the "state appointed attorney so as to properly draft his appeal to the U.S. Supreme Court" is without merit. Although it is not clear if plaintiff is referring to his own state-appointed attorney,[6] even if it was, there is no indication that plaintiff was unable to contact his attorney by any number of other means, including by letter or telephone. Although plaintiff may have preferred to meet with counsel in person, where other means of communication are available, plaintiff cannot be said to have been denied access to the courts. See Lewis, 518 U.S. at 351 (upholding the right of "meaningful access to the courts" generally, but not guaranteeing prisoners the right to their preferred means of obtaining such access).

Finally, although plaintiff states that defendant Hatch refused to put postage on a civil action complaint plaintiff wished to file in February 2007, and that defendant Williams failed to mail a

---

[5] The Court notes that plaintiff had an active case before this Court at that time, Farrakhan v. Johnson, et al., 1:07cv599. However, numerous claims in that complaint were dismissed for failure to state a claim on July 13, 2007. Plaintiff was required to particularize and amend his complaint by the same Order. However, after being granted an extension of time to comply with the Order on August 9, 2007, plaintiff failed to do so and the remaining claims were dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure on October 1, 2007, well after the time period in which plaintiff alleges he was denied access to his legal materials.

[6] To whatever extent plaintiff seeks to claim that he is entitled to meet with any state appointed attorney to assist him with litigating his claims, plaintiff is mistaken. Although plaintiff has a right of access to the courts, including legal assistance and access to law libraries, he is not entitled to the assistance of appointed counsel simply because he is a pro se prisoner litigant. Prison officials have no obligation to provide plaintiff with all desired resources, only those minimums required by the Constitution, as noted above. See Lewis, 518 U.S. at 350.

lawsuit for him on September 13, 2007 causing his "case to be dismissed," plaintiff has again failed to allege facts to demonstrate an actual injury.  Even assuming prison officials interfered with plaintiff's submission of documents to the courts, he has not indicated that he had non-frivolous claims which were impeded.  See Cochran, 73 F.3d at 1317 (noting that plaintiff's complaint "was primarily deficient . . . because [plaintiff] failed to assert any actual injury resulting from prison officials' conduct," and plaintiff, an "inveterate litigator," claimed only that "he was injured because he was prevented from filing lawsuits," a statement which the district judge must have found "absurd").  Therefore, claim 7 must be dismissed for failure to state a claim.  28 U.S.C. § 1915A(b)(1).

     8. Punitive Segregation:

     In claim 8, plaintiff alleges that he was assigned to punitive segregation by defendant Roach as reprisal for filing civil litigation, grievances, and letters to the governor about his adverse treatment and denial of rights, and that there was no evidence that plaintiff was a threat to persons or property. Claims of retaliation are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Adams, 40 F.3d at 74.  To state a claim of retaliation, plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Id. at 75.  Moreover, he must allege sufficient facts to support his allegation of a retaliatory motive behind defendants' actions.  White v. White, 886 F.2d 721, 724 (4th Cir. 1989).  Bare assertions of retaliation do not establish a claim of constitutional dimensions. Adams, 40 F.3d at 75. In addition, plaintiff must allege with specificity that "but for the retaliatory motive, the complained of incident . . . would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995);

Ponchik v. Bogan, 929 F.2d 419 (8th Cir. 1991) (plaintiff must show that action would not have occurred "but for" the alleged reprisal). Here, plaintiff has not presented facts to show that the alleged action by defendant was in response to a constitutionally protected right or that the act itself violated such a right, nor has he done anything more than make bare assertions of retaliation. Such conclusory statements fall short of stating a claim of retaliation, and claim 8 must be dismissed for failure to state a claim pursuant to § 1915A.

    9. Equal Protection and VDOC Classification:

    In claim 9, plaintiff alleges that the classifcation system used by the Virginia Department of Corrections ["VDOC"] is biased and is "unequally manipulated by overrides." Plaintiff adds that he committed a major "100 series" offense, but was scored higher than someone who had committed a minor "200 series" offense. As noted above, to bring an equal protection claim, a prisoner must present facts to make a threshold showing "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Veney, 293 F.3d at 730-31 (quoting Morrison, 239 F.3d at 654). Plaintiff has presented no such facts here, instead making only conclusory allegations that the policy is applied unequally and that various levels of offenses are scored differently. Plaintiff does not indicate to which group of prisoners he is similarly situated, if any, nor does he allege any intentional or purposeful discrimination. The bare assertions presented by plaintiff fall short of stating an equal protection claim, and claim 9 must be dismissed for failure to state a claim. 28 U.S.C. § 1915A(b)(1).

    11. Due Process and Disciplinary Hearings:

    Plaintiff next alleges that defendants Collins, Newby, White, and Rodregas violated VDOC policies and procedures by finding him guilty based only on the testimony of the reporting officer,

17

and that defendant White refused to give plaintiff an appeal package to appeal his charges. Plaintiff also adds that defendants denied his request for witnesses. As an initial matter, the failure of prison officials to follow their own established procedures, without more, does not rise to the level of a constitutional violation. See Riccio v. County of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990). Here, plaintiff has done no more than allege violations of VDOC policies, and so he has not stated a due process claim for the purposes of § 1983.

Furthermore, although it is not clear if plaintiff was disciplined with a loss of good time credits, even assuming he was so disciplined, the facts he alleges fail to support a claim of a violation of his due process rights. When inmates face the loss of good time credits, they "are entitled to advance written notice of the claimed violation, as well as a written statement concerning the evidence relied upon and the reasons for the disciplinary action taken." Brown v. Braxton, 373 F.3d 501, 504 (4th Cir. 2004). However, "inmates are not entitled to confront the witnesses against them, nor are they guaranteed the right to retained or appointed counsel." Id. at 504-05. With regard to presenting evidence in the inmate's defense, the inmate has "the qualified right 'to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 505 (quoting Wolff v. McDonnell, 418 U.S. 539, 566 (1974)). Thus, prison officials have the discretion to keep the hearing within "reasonable limits," to refuse witness requests, and to limit access to collect statements or to compile other documentary evidence. Wolff, 418 U.S. at 566. Prison officials may refuse witness requests when such requests are irrelevant, not necessary, or present a hazard in an individual case. Id.

Here, plaintiff does not allege that he did not receive notice of the charges or a written statement of the evidence. He admits that he made requests for witnesses, but such requests were

18

denied upon review by prison officials. He also acknowledges that testimony was presented in

support of the charges against him. Thus, there is simply no violation of plaintiff's due process rights

on these grounds, and as noted, any violation of VDOC policies does not state a due process claim.

Finally, although plaintiff also states that he was "punished without due process and deprived of

liberty on many occasions" with the "approval" of numerous defendants, plaintiff has presented no

facts to support such conclusory statements. As a result, claim 11 must be dismissed for failure to

state a claim pursuant to § 1915A.

12. <u>Verbal Abuse:</u>

In claim 12, plaintiff alleges that defendant Sims threatened plaintiff, used racial slurs, and

told plaintiff that his Ramadan meals were poisoned. Plaintiff claims that he was placed in a state of

fear and "great emotional stress." When a defendant makes comments that constitute verbal abuse,

those comments alone do not rise to the level of an Eighth Amendment violation. <u>See</u> <u>Collins v.</u>

<u>Cundy</u>, 603 F.2d 825, 827 (10th Cir. 1979), <u>cited favorably in</u>, <u>Moody v. Grove</u>, 885 F.2d 865 (4th

Cir. 1989) (table) (unpublished). A verbal threat combined with action apparently designed to carry

out the threat, however, may state an Eighth Amendment claim. <u>See</u> <u>Hudspeth v. Figgins</u>, 584 F.2d

1345, 1348 (4th Cir. 1978). Here, plaintiff has not alleged that defendant Sims took any action to

carry out any threat inherent in his comments. Although Sims' comments may have been offensive

or hurtful to plaintiff, without more, they do not rise to the level of a constitutional violation.

Moreover, pursuant to 42 U.S.C. § 1997e, "[n]o Federal civil action may be brought by a prisoner

confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while

in custody without a prior showing of physical injury." Plaintiff simply has alleged no such injury

here. For these reasons, claim 12 must be dismissed for failure to state a claim pursuant to § 1915A.

19

## III.

For the above reasons, claims 1, 3, 4, 5, 6, 7, 8, 9, 11, and 12 must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim, claims 13-30 must be transferred to the United States District Court for the Western District of Virginia, and the instant complaint remains pending on claims 2 and 10.   An appropriate order will issue.

Entered this _13th_ day of _____*May*_____ 2009.

Alexandria, Virginia

/s/

**T. S. Ellis, III**
**United States District Judge**

20